UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LAURA BRANSKI,**

    **Plaintiff,**

  v.                                    Case No. 20-CV-428

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security**[1]**,**

    **Defendant.**

---

## DECISION AND ORDER

---

Laura Branski seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Branski filed an application for a period of disability and disability insurance benefits on February 15, 2016 and a Title XVI application for SSI on February 22, 2016. (Tr. 14.) In both applications, Branski alleged disability beginning on November 1, 2006 due to major depression, post-traumatic stress disorder ("PTSD"), anxiety disorder, panic disorder with agoraphobia[2], minor obsessive-compulsive disorder, back problems, and high blood pressure.

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

(Tr. 66–67, 79–80.) Branski's applications were denied initially and upon reconsideration. (Tr. 14.) Branski filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on May 7, 2019. (Tr. 33–65.) Branski testified at the hearing, as did Dennis Duffin, a vocational expert. (Tr. 33.)

In a written decision issued May 16, 2019, the ALJ found that Branski had the severe impairments of depression, anxiety, panic disorder with agoraphobia, and PTSD. (Tr. 16.) The ALJ further found that Branski did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 18.) The ALJ found that Branski had the residual functional capacity ("RFC") to perform medium work with the following limitations: incapable of climbing ladders, ropes, and scaffolds; must avoid all exposure to hazards, including unprotected heights and moving mechanical parts; capable of no more than occasional exposure to extreme heat; incapable of operating a motor vehicle for work; incapable of traveling for work; able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline or within high quota demands; able to make occasional, simple work-related decisions in a job that involves only occasional changes in a routine work setting; able to sustain concentration and persist at simple tasks up to two hours at a time with normal breaks during an eight hour workday; incapable of interaction with the general public, capable of occasional brief interaction with co-workers and supervisors but incapable of performing

---

[2] Agoraphobia is a "mental disorder characterized as so pervasive that a large number of external life situations are entered into reluctantly or are avoided; often associated with panic attacks." Agoraphobia, *Stedman's Medical Dictionary* 18100 (28th ed. 2006).

2

tandem tasks or working in a team environment; and would be off task up to 5% of the workday in addition to regularly scheduled breaks due to the combined effects of her impairments. (Tr. 19.)

While the ALJ found that Branski could not perform her past relevant work, the ALJ also found that given Branski's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 23–24.) As such, the ALJ found that Branski was not disabled from November 1, 2006 through the date of the decision. (Tr. 25.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Branski's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does

3

Case 2:20-cv-00428-NJ   Filed 09/30/21   Page 3 of 12   Document 19

not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Branski alleges three errors by the ALJ in finding her not disabled: (1) failing to account for her difficulty leaving her house and variable functioning in her RFC; (2) improperly weighing the opinions of her three treating mental health providers; and (3) improperly discounting her subjective symptoms. (Pl.'s Br., Docket # 14.) I find that the ALJ erred in his evaluation of Branski's subjective symptoms. Because re-evaluation of her subjective symptoms on remand will likely alter the RFC analysis, I will not address Branski's remaining arguments at length.

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage,

4

effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

In evaluating Branski's allegations of disabling symptoms, the ALJ noted that the record was significant for treatment related to Branski's mental health issues, particularly depression, anxiety, panic disorder with agoraphobia, and PTSD. (Tr. 21.) The ALJ further noted that Branski "regularly reported or was observed to display behavior and temperament consistent with these diagnoses, including panic attacks, feelings of hopelessness, flashbacks, social isolation, difficulty thinking or concentrating, and fatigue." (*Id.*) However, the ALJ discounted Branski's allegations because her treating and examining providers regularly observed her as alert; oriented as to time, place, and person; well-developed, well-nourished, well-groomed, and in no acute distress; cooperative, pleasant, and friendly; with normal mood and affect; coherent in her thoughts; and with intact memory, insight, judgment, and concentration. (*Id.*) The ALJ also noted that recommended treatment for Branski's mental impairments was conservative and consisted of counseling and psychotropic medications, that the record indicated some improvement in her symptoms with medication, and that Branski testified that heat and crowds can trigger her panic attacks. (*Id.*)

There is no logical bridge between the evidence and the ALJ's conclusion that Branski's allegations of disabling symptoms from her agoraphobia were not as severe as alleged. While the ALJ acknowledged Branski's claims that her difficulty leaving home was her main impediment to work (Tr. 20), the ALJ failed to address record evidence regarding agoraphobia specifically. Branski treated with various mental health providers throughout the

5

relevant period who documented her reported symptoms from agoraphobia. For example, in September 2015, Branski told her then-therapist Antoinette Stout, LPC that she had panic attacks often if she experienced conflicts and had to leave her house. (Tr. 719.) Stout noted that Branski "does well in a session, but it is the time it takes to get her to the session that is difficult." (*Id.*) That same month, Stout reported that Branski tended to "hide away" in her apartment and would go shopping if her mother went, but otherwise did not want to leave home. (Tr. 716.) Similarly, in January 2016, Stout noted Branski's statements that she rarely leaves her home, will not go shopping on her own, and usually goes shopping with her mother. (Tr. 705.) In August 2016, Branski's treating psychiatrist, Dr. Selahattin Kurter, noted that Branski only left the house to go grocery shopping. (Tr. 781.) In January 2017, Branski reported to her therapist, Mary Beth Layden, LCSW, that she was confined to her home and only left when necessary, had a fear of other people and enclosed places, and got most relief from panic when isolated. (Tr. 883–85.)

Again, the ALJ discounted Branski's subjective symptoms based on medical records where she was documented as alert; oriented as to time, place, and person; well-developed, well-nourished, well-groomed, and in no acute distress; cooperative, pleasant, and friendly; with normal mood and affect; coherent in her thoughts; and with intact memory, insight, judgment, and concentration. However, because the ALJ never explicitly confronted Branski's allegations of disabling symptoms from agoraphobia, the ALJ's rationale for concluding that these records were inconsistent with Branski's allegations is unclear. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

6

Nor is the subjective symptom evaluation supported by the select treatment records the ALJ cites as demonstrating improvement in Branski's symptoms with medication. The ALJ points to a treatment record from 2008 where Branski reported feeling great on her medications and that her anxiety and depression were much better (Tr. 532), a 2016 treatment record where she stated her depression was "better" and her anxiety was "a bit better" (Tr. 780), and a treatment record from 2017 where she reported that she was "doing ok" and that her medications were helping (Tr. 846). These records, however, do not address the consistency of Branski's agoraphobia allegations with evidence in the record. The ALJ also noted that the recommended treatment for Branski's impairments was conservative and consisted of counseling and psychotropic medications. (Tr. 21.) But the fact that Branski's mental impairments were managed by counseling and medication alone is not sufficient to overcome the ALJ's failure to confront Branski's reported difficulty leaving her home. For all of these reasons, I find the ALJ erred in his consideration of Branski's subjective symptoms and that remand is warranted on this ground.

Branski also argues that the ALJ erred in assessing her RFC by failing to account for her difficulty leaving her home or her variable functioning. (Pl.'s Br. at 4.) As for her difficulty leaving home, Branski asserts that the ALJ failed to explain why no limitations in the RFC accounted for this difficulty and did not acknowledge evidence supporting a limitation of impairment-related absenteeism at work. (*Id.* at 8.) Because the ALJ erred in considering Branski's subjective symptoms from agoraphobia, I agree that the RFC failed to explain why further limitations to account for her reported difficulty leaving home were not warranted. Thus, remand is also warranted on this ground.

7

Case 2:20-cv-00428-NJ   Filed 09/30/21   Page 7 of 12   Document 19

As for her variable functioning, Branski asserts that while the ALJ conceded that she experienced both periods of decompensation and periods of improvement in her mental health symptoms, the ALJ misconstrued and cherry-picked the record by summarizing ten years' worth of treatment notes in five sentences. (*Id.* at 9.) She further argues that the ALJ's failure to include a need for breaks or absenteeism in the RFC to account for her variable functioning constitutes reversible legal error. (*Id.* at 10.) It is true that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Thus, to the extent that Branski's agoraphobia on her "bad days" will prevent her from leaving the house, the ALJ should account for this limitation in reconsidering the RFC.

Finally, Branski argues that the ALJ misconstrued the record in assigning little weight to the opinions of her treating psychiatrist, Dr. Selahattin Kurter, and treating therapists, Mary Beth Layden, LCSW, and Gregory Bushman, MSSW. (Pl.'s Br. at 13.) In a Mental Impairment Medical Source Statement completed on May 2, 2018, Dr. Kurter opined that Branski would likely need to lie down for three or more hours during a workday due to significant apathy from mental illness/depression; would likely have difficulty interacting with or working in proximity to others in a workplace setting due to significant social anxiety; and would be absent more than four days on average per month due to her anxiety. (Tr. 800–01.)

Dr. Kurter further opined that Branski would likely need six or more breaks per day due to intrusive thoughts, panic/anxiety, and her need to isolate; would be off task more than thirty percent of the workday and less than fifty percent as efficient as an average worker; would be unable to perform work involving detailed tasks; and would need extra supervision

8

several times per day due to poor task persistence. (Tr. 801–02.) In October 2018, therapists Layden and Bushman each completed Mental Impairment Mental Source Statements in which they opined similar limitations Dr. Kurter's. (Tr. 893–97, 854–58.) The ALJ assigned little weight to all three opinions, reasoning that they consisted of "fill-in-the blank and check-box forms" with little explanation of the providers' recommendations and were inconsistent with objective findings of intact memory, normal concentration, and fair insight and judgment, as well as many of Branski's activities of daily living. (Tr. 22.)

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[3] If the opinion of a treating source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. SSR 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate the opinion's weight by considering a variety of factors, including the length, nature, and extent of the claimant and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

---

[3] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules that were in effect at the time of the ALJ's decision. https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (last visited September 29, 2021).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

"Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Here, Branski's providers opined that she would have difficulties several times a week interacting with others at work due to anxiety (Tr. 800, 854) and that she would miss more than four days of work per month due to her anxiety or difficulty functioning without the pressure of others (Tr. 801, 894). The record contained numerous instances of anxiety to support these opinions. (Tr. 845, 860, 866, 869, 879 900, 916, 917.) And the ALJ's reference to findings in the record of intact memory, normal concentration, and fair insight and judgment are not inconsistent with Branski's providers' opinions that she would be precluded from working due to her anxiety.

Further, while the ALJ generally noted Branski's ability to perform many of her activities of daily living, it is unclear exactly which activities were inconsistent with Branski's treating providers' opinions, or how the ALJ reached that conclusion. With respect to Branski's anxiety, the ALJ did note at step three of the sequential evaluation process that Branski could shop for necessities and interact appropriately with family, friends, and medical providers. (Tr. 18.) However, these activities do not address the impact of Branski's agoraphobia or the limitations she reported experiencing in completing them. For example,

10

Branski told therapist Bushman that at a recent family gathering at her house, she became anxious as more people arrived, started feeling claustrophobic, and needed to step out onto the porch away from others to calm down. (Tr. 917.) Branski also testified that she could not go out alone if she did not know when and how she would get home and that she shopped once every two or three weeks for about half an hour and got "in and out" as fast as she could. (Tr. 362.) She also testified that within the last year, she left home alone once to walk to the corner store and used a cart to keep steady (Tr. 45–46) and tried to use the bus once to go places but could not get on (Tr. 58). The ALJ's failure to address evidence related to Branski's anxiety, particularly her agoraphobia, impacted the evaluation of her providers' opinions. As such, find the ALJ erred on this ground as well.

## CONCLUSION

Branski argues that the ALJ committed several errors in finding her not disabled. I agree that the ALJ erred in considering Branski's subjective symptoms, which impacted the analysis of Branski's RFC and the weight given to the opinions of her treating providers.

Branski requests reversal and an award of benefits (Pl.'s Br. at 21), but that remedy is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge